1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | |
|---|---|
| **VIRGIL LOUIS RATLIFF,** | Civil No.      10-cv-1705-H(DHB) |
| **Petitioner,** | |
| **vs.** | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE PETITION FOR WRIT OF HABEAS CORPUS** |
| **M. MARTEL, Warden,** | |
| **Respondent.** | |

17      Virgil Louis Ratliff ("Ratliff"), proceeding pro se and in forma pauperis with a 28 U.S.C.

18 § 2254 petition for writ of habeas corpus ("Petition"), seeks relief from his October 2007 conviction

19 and his 33-years-to-life sentence in San Diego County Superior Court Case No. SCE 275300 for two

20 residential burglaries and resisting arrest, with prior felony enhancements.  Respondent filed an

21 Answer, conceding the Petition was timely filed (ECF No. 70, Answer, 1:11)[1] but opposing any habeas

22 relief.  Despite two extensions of time (ECF Nos. 73, 78), Ratliff filed no Traverse, despite a lengthy

23 case docket, including a  "Declaration of Due Diligence" he filed on March 13, 2012. (ECF No. 109.)

24 His Traverse deadline passed on January 20, 2012.  The Court has liberally construed Ratliff's

25 miscellaneous arguments in his filings since the Answer as his likely responsive arguments.  For the

26 reasons discussed below, it is recommended that the Petition be **DENIED**.

27

_____

28      [1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic filing system.

1  **I.    BACKGROUND**

2  **A.    Factual Background**

3    In its July 8, 2009 reasoned decision affirming the judgment, the California Court of Appeal

4  summarized the underlying facts. A presumption of correctness attaches to state court determinations

5  of factual issues.  28 U.S.C. §2254(e)(1).

6    On the evening of October 18, 2007, Ratliff entered two mobile home
   residences at a senior citizen mobile home park in El Cajon.  At about 10:00 p.m. that
7    evening, Robert Jackson was sleeping when he heard his back patio door opening, saw
   the bathroom light come on inside the house, and saw a shadow on the interior wall.
8    He yelled, "What the hell are you doing here?"  As Jackson approached, the man
   turned off the light and hurried out the door. Jackson stopped at the door and saw the
9    man running down the driveway heading west toward the back of the mobile home
   park.  Jackson called police, and later that evening identified Ratliff as the man in
10   police custody. Ratliff's mother had lived right behind Jackson's home and Ratliff had
   visited her there frequently.  Jackson had not given Ratliff permission to enter his
11   home.  He did not notice anything missing afterwards.

12   At about 10:00 or 10:30 p.m., Sam Duron was sitting at his computer when a
   motion detector inside his patio activated, lighting up and making a noise.  The
13   detector would activate if someone opened his screen door and stepped inside the
   patio, which was fully enclosed and attached to his house.  Duron walked to his front
14   door and looked out the window, switched on the outside light and saw someone inside
   starting to exit the patio.  Duron followed the person outside where there were
15   streetlights and, seeing it was a man, asked, "Who are you? May I help you with
   something?" The man turned around, said something, and took off running.  Thinking
16   he might try to break into someone else's home, Duron got in his car and tried to find
   the man.   While he was driving, Duron encountered El Cajon police officers
17   responding to another person's call and gave them a statement about what had
   happened.
18
   About 15 or 20 minutes after the police left, Duron heard noises outside his
19  driveway and called 911.  Police responded and eventually located Ratliff, who Duron
   identified as the man inside his patio that evening by his distinctive shirt.  Duron knew
20  that Ratliff's mother had previously lived in the mobile home park.  Duron did not see
   anything missing or disturbed from his patio area.
21
   That same evening, around 11:00 or 11:30 p.m., the mobile home park's
22  assistant manager, Carol Cruse, was at home when she heard her neighbor's metal
   ladder rattling as if it were being moved. She went outside and asked who was there.
23  Cruse walked around to the back of her trailer and saw the ladder propped up against
   the side of her home, adjacent to a closed window.  The ladder had not been there
24  before. She did not see anything else unusual such as signs of forced entry or damage.
   Cruse looked down toward the carport area of her neighbor's yard and saw Ratliff
25  walking at the corner.  She had seen Ratliff before when he was visiting his mother.
   When Cruse asked, "Who are you," Ratliff mumbled something and quickly walked
26  away.  Cruse called 911.

27   Police responded to at least three calls reporting a prowler at the mobile home
   park that evening: from Jackson at 10:15 p.m., from Duran [*sic*] at 10:45 p.m., and one
28  from another resident, Fran Mowers, at 12:45 a.m.  An officer responding to the last

1      call heard voices from a previously searched area and saw Ratliff running out from an
area of parked recreational vehicles.  The officer identified himself and shouted at
2      Ratliff to stop, but Ratliff ignored the commands and continued to run.  Eventually, the
officer cornered Ratliff, who put up his fists like a boxer and took a swing at that
3      officer.  When the officers finally grabbed him and took him to the ground, Ratliff
violently struggled and kicked one of the officers, ignoring commands to put his hands
4      behind his back.  Ratliff did not have any loot or property with him.

5  (Lodgment No. 3, slip op. at 2-4, People v. Ratliff, No. D053441 (Cal. Ct. App.).)

6      Ratliff was charged in a November 2007 Information with two counts of residential burglary,

7  and two resisting arrest counts, one a felony and the other a misdemeanor.  (Lodgment No. 10, Clerk's

8  Transcript ("CT") at 0001-0002.)  The Information also identified three probation denial priors and

9  two strike priors.  (Id. at 0003-0004.)  The court granted Ratliff's election to represent himself at trial

10  after inquiry and findings that he was making a voluntary, intelligent, and understanding waiver of his

11  right to counsel.  (Id. at 0005-0006.)

12      Ratliff testified in his defense.  According to him, that evening he was looking
for his wife; he had been told by his probation officer she might be kidnapped or in his
13      mother's trailer in El Cajon and so he knocked on doors asking people if they had seen
her.  He denied trying to steal anything or hurt anyone.  He denied trying to hit the
14      police or swing at the officers.  He also denied entering anyone's mobile home except
his mother's, which he had entered through an open window.  Ratliff stated he climbed
15      the ladder to get a better view of the trailers or the street in search of his wife,
admitting he had borrowed it without asking.  On cross-examination, Ratliff denied
16      that in late September 2007, his wife had gotten restraining and eviction orders against
him and had sheriffs physically remove him from their apartment.  He claimed the
17      entire incident was a "conspiracy."

18  (Lodgment No. 3, slip op. at 2-4.)

19     **B.**    **Procedural Background**

20      Ratliff's January 2008 trial lasted just over two days.  (Lodgment No. 10, CT 0204-0212;

21  Lodgment No. 11, Reporter's Transcript ("RT") Vols. 5, 6.)  The jury deliberated about two hours

22  before returning guilty verdicts on all charges:  the two counts of first degree residential burglary,

23  felony resisting arrest, and misdemeanor resisting arrest.  (Lodgment No. 11, RT Vol. 7 at 534-540;

24  Lodgment No. 10, CT at 0213-0216.)  After the jury was excused, the court accepted for inclusion in

25  the case file Ratliff's proffer of photographs and documents in support of his contention the charges

26  and the conduct of the case were the result of a "conspiracy."  (Id. at 536-537, 541-543.)

27      Ratliff was sentenced on February 22, 2008.  (Lodgment No. 11, RT Vol. 8.)  At sentencing,

28  the court reviewed the verdicts and confirmed that Ratliff had admitted before trial the charged

1  allegations of a violent prison prior and a serious felony prior, both strike offenses. (Id. at 545; *see*

2  Lodgment No. 11, RT Vol. 3 at 174, 176.) The court explained its reasons for declining to strike one

3  of his priors, as Ratliff had requested. (Lodgment No. 11, RT Vol. 8 at 554-555.) For Count One, he

4  was sentenced to the mandatory 25 years to life. For Counts Two and Three, he received a 25 years

5  to life sentence, to be served concurrently with Count One. In addition, he received a three-year

6  consecutive term for the violent prison prior and a five-year consecutive term for the serious felony

7  prior, totaling 33 years to life. Ratliff was also to serve an additional consecutive term of 16 months

8  associated with two other cases in which he had already been sentenced. (Id. at 556-558.)

9       Ratliff's direct appeal raised a single issue: insufficiency of the evidence on the required intent

10  element to support the burglary convictions: "The central issue in this appeal is whether the evidence,

11  including that of appellant's conduct during and after his entry, supports a reasonable inference that

12  the intent to commit theft existed at the time he entered the trailer of Robert Jackson and the patio area

13  attached to Sam Duron's mobile home." (Lodgment No. 1, Opening Brief, People v. Ratliff, D053441

14  at 13 (Cal. Ct. App.).) "[T]he absence of a logical or rational explanation for appellant's admitted

15  erratic behavior that night does not constitute sufficient evidence of intent to steal." (Id. at 14.) The

16  Court of Appeal rejected the claim on the merits in a reasoned decision filed July 8, 2009. (Lodgment

17  No. 3.) Ratliff petitioned the California Supreme Court for review, raising the same insufficiency of

18  evidence claim. (Lodgment No. 4, People v. Ratliff, SD2008802489 (Cal.).) That court summarily

19  denied the petition on September 23, 2009. On August 11, 2010, Ratliff filed his pro se federal

20  Petition. (ECF No. 1.) For several months, beginning in September 2010, he pursued simultaneous

21  collateral relief in state court.

22       Ratliff's federal Petition raises four grounds for relief: a due process claim alleging the trial

23  court failed to hold a timely Marsden hearing to appoint new counsel (Ground One, id. at 6); trial court

24  error in denying his motion to suppress eyewitness identification and failure of the jury to consider

25  his "mitigating mental state" (Ground Two, id. at 7); trial court failure to address his motion to strike

26  a prior strike conviction (Ground Three, id. at 8); and insufficient evidence to establish beyond a

27  reasonable doubt that he committed burglary, actual innocence, and instructional error (Ground Four,

28  id. at 9). The Court issued a "Notice Regarding Possible Dismissal Of Petition For Failure To Exhaust

1   State Court Remedies," warning him that he had filed a "mixed petition" containing both exhausted

2   and unexhausted claims, presenting him with four procedural options, and setting a deadline of

3   September 24, 2010 for him to notify the Court of his choice.  (ECF No. 4.)

4        On September 28, 2010, Ratliff filed a letter Motion To Stay the federal proceedings, notifying

5   the Court he was "trying to fully-exhaust my Petition at state court" and was also trying to obtain all

6   his trial exhibits.  (ECF No. 7; *see* Lodgment No. 7, September 21, 2010 habeas petition to San Diego

7   County Superior Court.)  The Court denied the motion without prejudice on December 2, 2010, after

8   he had failed to respond to a briefing schedule the Court set to allow him to make the showing

9   required for granting stay and abeyance set in Rhines v. Weber, 544 U.S. 269, 277-78 (2005).  (ECF

10   Nos. 8, 9.)  The Court next issued a scheduling Order filed January 25, 2011 for Respondent's Motion

11   To Dismiss the Petition or for an Answer and Traverse.  (ECF No. 10.)

12        Respondent timely moved to dismiss the federal Petition on March 7, 2011, contending that

13   Ratliff's federal petition was mixed, containing in Ground Four one partially exhausted claim, but

14   presenting unexhausted claims as Grounds One, Two, and Three.  (ECF No. 12.)  To satisfy the

15   exhaustion requirement codified at 28 U.S.C. § 2254(b)(1), a habeas petitioner must demonstrate

16   either (1) that he has fairly presented his claim to the highest state court with jurisdiction to consider

17   it, or (2) that no state remedy remains available to him.  *See* Johnson v. Zenon, 88 F.3d 828, 829 (9th

18   Cir. 1996).  Ratliff filed an Opposition to the motion on March 23, 2011, disputing that he failed to

19   exhausted his state-court remedies.  (ECF No. 14.)  While that motion was pending, he filed requests

20   for extensions of time to file a Traverse and several letters accepted on discrepancy orders, as well as

21   a June 8, 2011 Motion For Appointment Of Counsel.  (ECF Nos. 14-27.)

22        A June 20, 2011 Report and Recommendation to deny the motion to dismiss addressed

23   Respondent's exhaustion arguments.  (ECF No. 30.)  Although the record reflects Ratliff failed to

24   present all his federal Petition claims to the state's highest court before seeking relief here, a defect

25   that deprives the state of a fair opportunity to consider the factual and legal bases of federal claims and

26   constitutes a failure to exhaust state court remedies (28 U.S.C. § 2254(e)), it was recommended the

27   Court find he satisfied the standards for "technical" exhaustion.  (Id. at 3-4, citing inter alia Picard v.

28   Connor, 404 U.S. 270, 275 (1971); Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513

1  U.S. 364, 365-66 (1995); Johnson, 88 F.3d at 829.)  "The exhaustion requirement may be satisfied

2  notwithstanding a failure to present a claim to the state supreme court, 'if it is clear that [the habeas

3  petitioner's] claims are now procedurally barred under [state] law."  (Id., citing inter alia Gray v.

4  Netherland, 518 U.S. 152, 161 (1996); Valerio v. Crawford, 306 F.3d 742, 769-70 (9th Cir. 2002)

5  (noting that the exhaustion requirement is not jurisdictional, and procedurally barred claims can be

6  deemed exhausted); Cassett v. Stewart, 406 F.3d 614, 621 n.5 (9th Cir. 2005) ("A habeas petitioner

7  who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion;

8  there are no state remedies any longer 'available' to him"), *quoting* Coleman v. Thompson, 501 U.S.

9  722, 732 (1991).)  On that basis, the Report and Recommendation advised that Respondent's Motion

10  To Dismiss should be denied, concluding that Ratliff could not return to state court to fairly present

11  his unexhausted claims because they would be time-barred under state law.  (Id. at 4-5.)  By Order

12  entered June 30, 2011, the Court denied Respondent's Motion To Dismiss, and by Order entered

13  July 12, 2011, the Court denied Ratliff's Motion To Appoint Counsel. (ECF Nos. 31, 34.)

14       The overlapping state court proceedings began with Ratliff's September 21, 2010 pro se habeas

15  petition to the San Diego County Superior Court in which he listed a number of purported

16  constitutional and other defects associated with his conviction. (Lodgment No. 7.)   In its

17  November 15, 2010 reasoned decision denying him any relief, the superior court summarized his

18  claims:  "Petitioner contends his due process rights were violated in that the trial court failed to

19  conduct a timely *Marsden* hearing; Petitioner's right to a speedy trial was denied; there was

20  insufficient evidence to convict; there was prosecutorial misconduct; Petitioner's right to confront

21  witnesses was denied; the line-up was unconstitutionally suggestive; the trial court committed errors;

22  and ineffective assistance of counsel."  (Lodgment No. 7-1, In re Ratliff, EHC 774, slip op. 2:3-7.)

23  The superior court disposed of the insufficiency of evidence issue by noting "this issue was litigated

24  in Petitioner's appeal from the conviction," and he "does not demonstrate an exception to the general

25  rule that issues that were raised and litigated on direct appeal may not be revisited on habeas corpus."

26  (Id., 2:18-22, citing In re Harris, 5 Cal.4th 813, 829 (1993); In re Terry, 4 Cal.3d 911, 927 (1971); In

27  re Waltreus, 62 Cal.2d 218, 225 (1965).)  Concerning "the issues regarding the *Marsden* hearing,

28  speedy trial rights, prosecutorial misconduct, right to confront witnesses, the line-up, and the alleged

1  trial court error raised by Petitioner in the present petition," the superior court applied the "general

2  rule" in California that "habeas corpus cannot serve as a substitute for an appeal, and that matters that

3  'could have been, but were not, raised on a timely appeal from a judgment of conviction' are not

4  cognizable on habeas corpus in the absence of special circumstances warranting departure from that

5  rule." (Lodgment No. 7-1, 2:23-27, citing In re Clark, 5 Cal.4th 750, 765 (1993), quoting Ex Parte

6  Dixon, 41 Cal.2d 756, 759 (1953); In re Walker, 10 Cal.3d 764, 773 (1974).) The court determined

7  the new issues he raised in the petition "are cognizable on appeal and should have been raised in an

8  appeal," and concluded "Petitioner does not have the right to raise issues in a petition for writ of

9  habeas corpus that could have been, but were not, raised on appeal." (Id., 2:28-3:4.) Further finding

10  he "has not shown any special circumstances that would warrant this court departing from the rule that

11  habeas corpus cannot serve as a substitute for an appeal," the court determined those claims would be

12  "summarily denied." (Id., 3:4-7.) Finally, concerning Ratliff's claim he was provided ineffective

13  assistance of counsel, the court noted "on December 11, 2007, Petitioner's request to represent himself

14  was granted," and given that "Petitioner represented himself at trial, he cannot claim he was provided

15  ineffective assistance of counsel in the proceedings." (Id., 3:8-11.)

16      On January 5, 2011, Ratliff filed a habeas petition in the California Court of Appeal.

17  (Lodgment No. 8.) In its February 7, 2011 decision denying that petition, the court identified nine

18  issues. (Lodgment No. 8-1, In re Ratliff, D058893, slip. op. (Cal. Ct. App.).) In addition to the issues

19  addressed and disposed of by the superior court in his habeas petition there, Ratliff added claims that

20  he believes the witnesses were unreliable, there was instructional error, the jury did not consider his

21  mental state, the conviction was based on hearsay, and the sentence was excessive. (Id.) The court

22  of appeal relied on the state law proposition: "Postconviction habeas corpus attack on the validity of

23  a judgment of conviction is limited to challenges based on newly discovered evidence, claims going

24  to the jurisdiction of the court, and claims of constitutional dimension." (Id., quoting Clark, 5 Cal.4th

25  766-67.) In addition, the court of appeal stated, as had the superior court: "Issues resolved on appeal

26  will not be reconsidered on habeas corpus, and in the absence of special circumstances, the writ will

27  not lie where the claimed errors could have been, but were not, raised on a timely appeal from a

28  judgment of conviction." (Id., citing Clark, 5 Cal.4th at 765.) Singling out the ineffective assistance

7                                   10cv1705-H(DHB)

1    of counsel claim, the court added: "Ratliff has not demonstrated both deficient performance under an

2    objective standard of professional reasonableness and prejudice under a similarly objective standard

3    of reasonable probability of an adverse effect on the outcome." (Id., citing People v. Waidla, 22

4    Cal.4th 690, 718 (2000).)   The Waidla articulation under the California Constitution expressly

5    parallels that of the federal Sixth Amendment ineffective assistance of counsel standard from

6    Strickland v. Washington, 466 U.S. 668, 687-96 (1984).

7         Ratliff had filed a second habeas petition in the California Court of Appeal on

8    February 3, 2011.  In its decision filed March 2, 2011 denying that petition, the court took "judicial

9    notice of the direct appeal No. D053441 and prior petition No. D058893." (Lodgment No. 8A, In re

10   Ratliff, D059103, slip op.; Lodgment No. 9-1, Docket, Case No. D059103.)   "The petition is

11   duplicative of the issues raised in No. D058893, summarily denied by this court on February 7, 2011."

12   (Id.)  He does not appear to have filed a habeas petition in the California Supreme Court, nor had he

13   previously presented any claim to the state's highest court other than alleged insufficiency of the

14   evidence to support his burglary convictions, a claim rejected by that court in its September 23, 2009

15   denial of his petition for review.  (Lodgment No. 4.)

16        In his federal case, after the denial of Respondent's Motion To Dismiss on June 30, 2011, the

17   Court accepted numerous additional filings from Ratliff related to discovery and his case preparation.

18   (ECF Nos. 35- 69.)  Respondent filed an Answer to the Petition on October 31, 2011.  (ECF No. 70.)

19   Ratliff received two extensions of the filing deadline for his Traverse, to December 19, 2011, then to

20   January 20, 2012.  (ECF Nos. 73, 78.)  To date, Ratliff has filed no Traverse, although the Court

21   accepted numerous additional communications from him between January 13, 2012 and March 13,

22   2012.  (ECF Nos. 91-109.)  This Court has liberally construed his pro filings to attempt to discern any

23   pertinent matter responsive to the Answer, but notes the theme of all his filings is overwhelmingly his

24   continued insistence that he was in the trailer park searching for his wife, not intending to commit any

25   burglary, and his disagreement with the jury's factual findings to the contrary.[2]

26        [2]   In particular, Ratliff filed a Motion captioned "Stay And Abeyance" on November 18, 2011,
     construed and granted by the magistrate judge then assigned to this case as a Motion For Extension Of Time
27   to file his Traverse.  (ECF Nos. 75, 78.)  He most recently filed a "Declaration Of Due Diligence" on March
     13, 2012, continuing to assert his long-standing argument he had not been provided with certain exhibits from
28   his trial (in particular, 911 call transcripts and certain photographs, although Respondent's Second Supplemental

1    Respondent argues no federal habeas relief is available or warranted because Ratliff's claim

2  that insufficient evidence supports the burglary convictions is without merit and was properly rejected

3  by the state courts, and his other three grounds with their subclaims are "not exhausted and are

4  procedurally barred."  (Lodgment No. 70-1, 8:18-20.)

5  **II.     DISCUSSION**

6         **A.     Legal Standards**

7              **1.     Federal Habeas Relief**

8    A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person

9  in custody pursuant to the judgment of a State court only on the ground he is in custody in violation

10 of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a) (West 2006).  The

11 Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of Ratliff's

12 Petition.  *See* Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).  AEDPA imposes a " 'highly deferential

13 standard for evaluating state-court rulings,' " requiring "that state-court decisions be given the benefit

14 of the doubt."  Woodford v. Visciotti, 537 U.S. 19, 24 (2002), *quoting* Lindh, 521 U.S. at 333 n.7.

15 "Factual determinations by state courts are presumed correct absent clear and convincing evidence to

16 the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a

17 factual determination will not be overturned on factual grounds unless objectively unreasonable in

18 light of the evidence presented in the state court proceeding, § 2254(d)(2)[.]"  Miller-El v. Cockrell,

19 537 U.S. 322, 340 (2003).

20    "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court,

21 subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  Harrington v. Richter, -- U.S. --, 131 S.Ct.

22 770, 784 (2011).  "When a federal claim has been presented to a state court and the state court has

23 denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

24 of any indication or state-law procedural principles to the contrary."  Id. at 784-85; *see* Gaston v.

25 Lodgment on November 21, 2011 appears to address and resolve that issue), and rearguing the evidence from
his trial. (ECF No. 109). Ratliff had also filed a Motion For Extension Of Time on April 5, 2011 in response

26 to Respondent's (ultimately unsuccessful) Motion To Dismiss, listing nine discrete arguments in support of his
Petition, contending he presented all those claims to the California Court of Appeal: denial of speedy trial right;

27 "trial counsel" was incompetent and ineffective; the evidence does not support the conviction; the witnesses
were unreliable; the lineup was suggestive; there was (unspecified) instructional error; the jury did not consider

28 his mental state; the conviction was based on hearsay; and the sentence was excessive.  (ECF No. 20 at 1.)

10cv1705-H(DHB)

1   Palmer, 417 F.3d 1030, 1038 (9th Cir.2005), *modified on other grounds*, 447 F.3d 1165 (9th Cir. 2006)

2   ("We construe 'postcard' denials . . . to be decisions on the merits").  Federal habeas relief is available

3   only if the result of a claim the state court adjudicated on the merits "was contrary to, or involved an

4   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

5   the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the

6   facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

7        A decision is "contrary to" clearly established precedent if it "applies a rule that contradicts

8   the governing law set forth in our cases," or it "confronts a set of facts that are materially

9   indistinguishable from" a Supreme Court decision but reaches a different result.  Early v. Packer, 537

10   U.S. 3, 8 (2002); *see* Williams v. Taylor, 529 U.S. 362, 404-06 (2000) (distinguishing the "contrary

11   to" standard from the "unreasonable application" standard).  "[R]eview under 28 U.S.C. § 2254(d)(1)

12   is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen

13   v. Pinholster, -- U.S. --, --, 131 S.Ct. 1388, 1398 (2011).  To be found an "unreasonable" application

14   of the precedent under 28 U.S.C. § 2254(d)(1), the state court's decision "must have been more than

15   incorrect or erroneous;" it "must have been 'objectively unreasonable.' "  Wiggins v. Smith, 539 U.S.

16   510, 520-21 (2003) (citations omitted).   In applying 28 U.S.C. § 2254(d)(2), federal habeas courts

17   must defer to reasonable factual determinations made by the state courts, to which a statutory

18   presumption of correctness attaches.  28 U.S.C. § 2254(e)(1); *see* Schriro v. Landrigan, 550 U.S. 465,

19   473-74 (2007).

20        In deciding whether relief is warranted, federal courts reviewing unconstitutional trial errors

21   apply the standard from Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) "uniformly in all federal

22   habeas corpus cases under § 2254," that is, the error must have had "a substantial and injurious effect

23   or influence in determining the jury's verdict."  Bains v. Cambra, 204 F.3d 964, 977 (9th Cir. 2000);

24   *see* Fry v. Pliler, 551 U.S. 112, 121-22 (2007).  Federal courts apply AEDPA standards to the "last

25   reasoned decision" by a state court addressing the claim.  Campbell v. Rice, 408 F.3d 1166, 1170 (9th

26   Cir. 2005); *see* Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned

27   state judgment rejecting a federal claim, [federal habeas courts apply the presumption that] later

28   unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."

1   "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden

2   still must be met by showing there was no reasonable [legal or factual] basis for the state court to deny

3   relief."  Harrington, 131 S.Ct. at 784.

4                              **2.        Procedural Default**

5          "As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1)

6   "a state court [has] declined to address [those] claims because the prisoner had failed to meet a state

7   procedural requirement," and (2) "the state judgment rests on independent and adequate state

8   procedural grounds." ' "  Maples v. Thomas, -- U.S. --, 132 S.Ct. 912, 922 (2012), *quoting* Walker v.

9   Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127 (2011) (parallel citations omitted) (*quoting* Beard, 130

10  S.Ct. at 615 (*quoting* Coleman, 501 U.S. at 729-730). When a state prisoner has not presented a federal

11  constitutional claim to the state's highest court and can no longer do so due to a state law bar, the claim

12  is exhausted because it is procedurally defaulted.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).

13         "Federal courts 'will not review a question of federal law decided by a state court if the

14  decision of that court rests on a state law ground that is independent of the federal question and

15  adequate to support the judgment.' "  Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), *quoting*

16  Coleman, 501 U.S. at 719, 729-30 (federal claims procedurally defaulted under state law must be

17  dismissed with prejudice); *see* Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 614 (2009) (same).

18  However, if the state court's decision does not clearly rest on an independent and adequate state

19  ground, it is presumed the denial was based at least in part on federal grounds, and the petitioner may

20  seek relief in federal court.  Siripongs v. Calderon, 35 F.3d 1308, 1317 (9th Cir. 1994).

21         Respondent contends all but Ground Four of Ratliff's Petition claims are procedurally

22  defaulted.  When the procedural default bar is invoked as an affirmative defense in federal habeas

23  proceedings, the burden shifts to the petitioner to place that defense in issue "by asserting specific

24  factual allegations that demonstrate the inadequacy of the state procedure."  Bennett, 322 F.3d at 585-

25  86.  If the petitioner does not carry that burden, and the state rule is adequate and independent, the

26  claim is procedurally defaulted and federal habeas review is foreclosed, unless the petitioner

27  demonstrates cause for the procedural default and actual prejudice.  Coleman, 501 U.S. at 750;

28  Maples, 132 S.Ct. at 922 ("The bar to federal review may be lifted, if 'the prisoner can demonstrate

1  cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged

2  violation of federal law' ") *quoting* <u>Coleman</u>, 501 U.S. at 750.  Adequate "cause" for a default under

3  that test must be an "external" factor that cannot fairly be attributed to the petitioner.  <u>Id.</u>, *citing*

4  <u>Coleman</u>, 501 US. at 753; *see also* <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000).  "Prejudice"

5  under the test requires that a petitioner show "not merely that the errors at his trial created a *possibility*

6  of prejudice, but that they worked to his *actual* and *substantial* disadvantage, infecting his entire trial

7  with error of constitutional magnitude."  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).

8      State courts can reach the merits of federal claims without foreclosing a respondent's

9  procedural default affirmative defense in federal court, as long as the adequate and independent state

10 ground for denial is a sufficient basis for the state court's judgment.  <u>Harris v. Reed</u>, 489 U.S. 255, 264

11 n.10 (1989); *see* <u>Beard</u>, 130 S.Ct. 612 (a state procedural rule may count as an adequate and

12 independent ground even if the state court had discretion to reach the merits despite the default).

13      **B.      Grounds One, Two And Three Are Procedurally Defaulted And, Alternatively,**

14              **They Are Without Merit**

15      In California, "habeas corpus cannot serve as a substitute for an appeal, and, in the absence of

16 special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie

17 where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment."

18 <u>Dixon</u>, 41 Cal.2d at 759; *see* <u>In re Robbins</u>, 18 Cal.4th 770, 814, n.34 (1998); *see also* <u>Park v.

19 California</u>, 202 F.3d 1146, 1151 (9th Cir. 2000) ("In California, a convicted defendant desiring to

20 bring claims in a state habeas petition must, if possible, have pursued the claims on direct appeal from

21 his conviction," referring to "the *Dixon* rule").  The <u>Park</u> court discussed subsequent California cases

22 establishing exceptions to the original <u>Dixon</u> rule, describing the purpose of its analytical approach

23 as "to establish the adequacy and independence of the State Supreme Court's future *Dixon* / *Robbins*

24 rulings and to indicate that a prisoner seeking collateral relief with respect to new federal claims no

25 longer had any recourse to exhaust in the state courts."  <u>Park</u>, 202 F.3d at 1152-53, n.4.

26      Ratliff's Ground One alleges a violation of his due process rights for failure of the trial court

27 to hear his <u>People v. Marsden</u>, 2 Cal.3d 118 (1970) motion for appointment of new counsel.  (ECF No.

28 1 at 7.)  Although his Petition states he raised that ground in the California Supreme Court in his

1  Petition For Review of the Court of Appeal decision in Case No. D053441 (ECF No. 1 at 6), the

2  record does not support that representation (*see* Lodgment No. 4, People v. Ratliff, No.

3  SD2008802489, Petition For Review), and his habeas Petition identifies only the court of appeal case

4  number in association with that representation, not any California Supreme Court case number (ECF

5  No. 1 at 2).  Ground Two alleges a violation of his right to a speedy trial, and due process violations

6  arising from purported trial court error for denying his request to suppress eye witness identification

7  and declining to order a lineup, failure of the jury to consider his "mitigating mental state," and

8  instructions that somehow "impaired jury's assessment of witness credibility."  (ECF No. 1 at 7.)

9  Ground Three alleges ineffective assistance of counsel at the preliminary hearing, and various due

10  process complaints associated with his sentencing, including alleged failure of the trial court to

11  address his motion to strike a prior conviction, excessive sentence, and trial judge bias.  (Id. at 8.)

12  Ratliff presented the same claims in the superior court and twice in the California Court of Appeal,

13  but only there, and all those claims were denied on procedural grounds.  (Lodgment Nos. 7, 7A, 8,

14  8A.)

15      However, as noted in Respondent's Answer, if Ratliff presented Petition Grounds One, Two,

16  or Three to the California Supreme Court at this late date, "they would no doubt be procedurally

17  barred, as they were in the orders of the Superior Court and . . . Court of Appeal, leaving him no

18  remedy in the state courts. Lodgs. 6A, 7A, 8A."[3]  (ECF No. 70-1, 20:20-24.)  In its June 2011 Order

19  denying Respondent's Motion To Dismiss the Petition on the ground it is "mixed," the Court observed

20  that Ratliff would likely encounter "two procedural bars to presenting his claims to the California

21  Supreme Court through a new habeas petition."

22      First, the state supreme would likely deny Petitioner's new petition because he could
23      have asserted claims 1, 2, and 3 on direct appeal of his conviction, but did not, and
        instead asserted only claim 4 – his insufficiency of evidence claim.  See In re Clark,
24      5 Cal.4th 750, 760 (1993) (holding that a "[petition for' writ [of habeas corpus] will not
        lie where the claimed errors could have been, but were not raised upon a timely appeal

25      _____

        [3]  The lodged record of the state superior court order and the two court of appeal habeas petition denial
26  decisions are actually Lodgment Nos. 7-1, 8-1, and 8A. "Lodgment 6" does not correspond to Respondent's
    description of it as Ratliff's habeas "petition to the California Superior Court" (ECF No. 70-1, 20:16-18), a
27  portion of which is actually provided as Lodgment No. 7.  Lodgment No. 7-1, not Lodgment "6A," is the
    superior court's November 15, 2010 order denying the petition. (*See* ECF No. 70-1, 20:18-19.) The Lodgments
28  contain no "Lodgment 6A."  Lodgment No. 6 is the one-page September 29, 2009 Remittitur from the
    California Court of Appeal.

1       from the judgment of conviction.").   Second, any new habeas petition would be
2       untimely at this point.

3   (ECF No. 31, 3:2-10, citing <u>Harris</u>, 5 Cal.4th at 828 n.7 (setting "reasonable time" standard within

4   which to bring habeas petitions).

5        The Court concluded Ratliff has thus "technically" fulfilled the exhaustion requirement, so that

6   a federal court "may properly exercise jurisdiction" over all the federal claims presented for habeas

7   relief here.  (ECF No. 31, citing <u>Gray</u>, 518 U.S. at 161; *see* ECF No. 34, Order Adopting Report And

8   Recommendation to deny Respondent's Motion to Dismiss.)   However, while related to exhaustion,

9   procedural default is a separate consideration.  Ratliff has not carried his burden to place at issue the

10  independence and adequacy of the cited state law grounds the California courts used to foreclose

11  collateral review of all but his sufficiency of the evidence claim.  *See* <u>Bennett</u>, 322 F.3d at 580, 586.

12  Nor has he demonstrated cause for the default and prejudice, or that a fundamental miscarriage of

13  justice would accompany this Court's decision not to consider those procedurally defaulted federal

14  claims.  *See* <u>Coleman</u>, 501 U.S. at 750.  The narrow "fundamental miscarriage of justice" exception

15  applies only when "a constitutional violation has probably resulted in the conviction of one who is

16  actually innocent."  <u>Murray v. Carrier</u>, 477 U.S. 478, 495–96 (1986); *see* <u>Edwards</u>, 529 U.S. at 451.

17  Ratliff makes neither showing, and the record does not support either conclusion.

18       In summary, Ratliff has not challenged the state courts' reliance on California procedural rules

19  and doctrines as inadequate to support a finding of procedural default of Grounds One, Two, and

20  Three, nor has he attempted to demonstrate cause and prejudice to excuse his procedural default of

21  those claims.   Based on his procedural history in the state courts and the District Court's prior

22  determinations in this case (*see*  ECF Nos. 31, 34),  it is recommended that Grounds One, Two, and

23  Three be **DENIED** as procedurally defaulted, foreclosing federal habeas relief on any of those

24  theories.

25       Nevertheless, "in the habeas context, a procedural default . . . is not a jurisdictional matter."

26  <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997).  If the Court elects to reach the merits of Ratliff's defaulted

27  claims despite his procedural default of those claims, it is recommended, alternatively, that each be

28  **DENIED** as not warranting federal habeas relief.

10cv1705-H(DHB)

1    Concerning Ratliff's challenge to the trial court's decision not to strike a prior conviction, that

2  decision entailed a limited exercise of the court's discretion permitted under California's three strikes

3  law, and does not  implicate any federal constitutional right or, consequently, any federal question

4  cognizable on habeas review.  *See* People v. Superior Court (Romero), 13 Cal.4th 497 (1996); People

5  v. Williams, 17 Cal.4th 148, 159-161 (1998).  Moreover, contrary to Ratliff's suggestion, the trial court

6  did not "ignore" his request to strike priors, but rather rejected it.  (Lodgment No. 11, RT Vol. 8 at

7  554-555.)  Federal habeas courts may not re-examine state court decisions on state law issues.  Estelle

8  v. McGuire, 502 U.S. 62, 67-68 (1991).  Similarly, his vague allusion to "judicial bias" is devoid of

9  any references to the record which he may view as supporting that conclusory claim.  This Court has

10 reviewed the trial transcript and found no conduct that could support even an inference of judicial bias.

11    Ratliff's speedy trial right claim is also without merit.  There is no fixed time period required

12 to satisfy the Sixth Amendment, and the United States Supreme Court does "not establish procedural

13 rules for the States, except when mandated by the Constitution."  Barker v. Wingo, 407 U.S. 514, 530,

14 523 (1972).  Respondent notes that the charging Information was filed on November 16, 2007, three

15 days after Ratliff's November 13, 2007 preliminary hearing.  (Lodgment No. 10, CT 0001-0004;

16 Lodgment No. 12.)  His trial began on January 14, 2008.  (Lodgment No. 10, CT 0202.)  That timing

17 satisfies his entitlement under Cal. Penal Code § 1382 to be tried within 60 days of being charged.

18 (Lodgment No. 70-1, 24:12-21.)  Ratliff identifies no inordinate delay, no prejudice from the timing

19 between charging and trial and, consequently, he raises no federal constitutional concern on this issue.

20    Ratliff alleges ineffective assistance of counsel at his preliminary hearing.  However, even if

21 there were constitutional error at the preliminary hearing, relief is warranted only if the petitioner

22 shows "that he was subsequently deprived of a fair trial or was otherwise prejudiced by reason of the

23 error."  People v. Stewart, 33 Cal.4th 425, 461-62 (2004). It is "well-settled" that "there is no

24 fundamental right to a preliminary hearing."  Howard v. Cupp, 747 F.2d 510, 510 (9th Cir. 1984)

25 (citation omitted). Even when a statutory right to a public preliminary hearing has been violated, "and

26 the resulting commitment had been '*rendered unlawful* within the meaning of Cal. Penal Code section

27 995,' " a defendant must still show a fair trial deprivation or other substantial prejudice.  Stewart, 33

28 Cal.4th at 461-62, *quoting* People v. Pompa-Ortiz, 27 Cal.3d 519, 529-30 (1980) (*citing* Coleman v.

1    Alabama, 399 U.S. 1, 11 (1970)).  Only errors or irregularities that constitute structural defects may

2    escape harmless error analysis. *See* Arizona v. Fulminante, 499 U.S. 279 (1991).  Moreover, as with

3    any ineffective assistance of counsel claim, the petitioner must demonstrate that counsel's

4    representation fell below an objective standard of reasonableness in some specific respect, and that

5    there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the

6    proceeding would have been different."  Strickland, 466 U.S. at 687, 694; *see also* Kimmelman v.

7    Morrison, 477 U.S. 365, 381 (1986).  Ratliff makes no such demonstration. *See* James v. Borg, 24

8    F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of

9    specific facts do not warrant habeas relief") (citation omitted).  The transcript of Ratliff's preliminary

10   hearing shows his counsel cross-examined the prosecution witnesses and argued specifically, albeit

11   unsuccessfully, for construction of the evidence in a light favorable to Ratliff and against holding him

12   to answer for the crimes.  (Lodgment No. 12 at 46-47.)

13        Ratliff  requested appointment of new counsel, but his Marsden hearing was continued.  The

14   record reflects he only moved for substitute counsel before trial, and only in connection with the

15   preliminary hearing, apparently unhappy that his attorney did not establish at that time that he was not

16   the mobile home park burglar. (*See* ECF No. 70-1, 27:8-15.)  Ratliff identifies no factual support in

17   the record for an alleged conflict or breakdown in the attorney-client relationship that would have

18   justified a substitution.  Even the total denial of counsel at a preliminary hearing is reviewed under

19   the harmless error rule.  Coleman v. Alabama, 399 U.S. at 11.  Ratliff chose to represent himself on

20   December 11, 2007, a month before trial.  (Lodgment No. 10, CT 0005-0006, 0193.)  He does not

21   contend his decision was involuntary in any way, and the trial court had counseled him on the record

22   about the risks of exercising that right.   No federal constitutional concern arises from those

23   circumstances.  The cause of Ratliff's dissatisfaction with the outcome of his trial cannot be imputed

24   to purported prejudicial misconduct of his attorney at the preliminary hearing, and his ineffective

25   assistance claim must fail.

26        For all the foregoing reasons, it is recommended the Court find the claims in Ratliff's Grounds

27   One, Two, Three are procedurally defaulted, and habeas relief should be **DENIED** on that basis.  If

28   the Court reaches the merits of those claims, it is alternatively recommended that the Court find none

1    presents a cognizable federal issue or the claims are vague and conclusory, and that any error be found

2    harmless. Fry, 551 U.S. at 121; Bains, 204 F.3d at 977.

3              **C.      Ground Four:  Sufficient Evidence Supports The Burglary Convictions**

4              Ratliff argues insufficient evidence supports his burglary convictions because nothing was

5    stolen, he was actually innocent of any intent to steal, and there was some unelaborated deficiency in

6    the jury instructions. (ECF No. 1 at 9.) The court of appeal affirmed Ratliff's judgment in a reasoned

7    decision, citing People v. Kraft, 23 Cal.4th 978, 1053-1054 (2000), applying the review standard from

8    People v. Johnson, 26 Cal.3d 557, 578 (1980) to his insufficient evidence claim. As summarized by

9    the Court of Appeal:

10             Ratliff contends the evidence is insufficient to support his burglary convictions
       because it does not support a reasonable inference that he entered any of the premises
11     with the intent to steal. Pointing out that no items of personal property were disturbed
       or missing from either residence and he did not possess any burglary tools or stolen
12     property at the time of his arrest, Ratliff maintains the prosecution's case was based on
       speculation and conjecture; that the case rested solely on the "absence of a logical or
13     rational explanation for [his] entry into the mobile homes," which is insufficient
       evidence of intent to steal. He argues evidence of his behavior that evening – the fact
14     he spoke with Duron, turned on the light in Jackson's bathroom, and loudly moved a
       metal ladder to Cruse's trailer – shows instead that he was confused or disoriented,
15     suggesting he mistakenly entered the mobile homes.

16   (Lodgment No. 3, slip op. at 5.)

17             The Johnson standard applied by the California courts to sufficiency of the evidence

18   challenges is the same as the federal standard. Johnson, 26 Cal.3d at 578, *citing* Jackson v. Virginia,

19   443 U.S. 307 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most

20   favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

21   crime beyond a reasonable doubt." Jackson, 443 U.S. 319. That standard applies to federal habeas

22   claims asserting insufficient evidence to support a state conviction. Juan H. v. Allen, 408 F.3d 1262,

23   1274 (9th Cir. 2005). "In addressing a challenge to the sufficiency of the evidence supporting a

24   conviction, the reviewing court must examine the whole record in the light most favorable to the

25   judgment to determine whether it discloses substantial evidence – evidence that is reasonable, credible

26   and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a

27   reasonable doubt." Kraft, 23 Cal.4th at 1053, *citing* Johnson, 26 Cal.3d at 578.

28   / / /

1      A reviewing court "faced with a record of historical facts that supports conflicting inferences

2  must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved

3  any such conflicts in favor of the prosecution, and must defer to that resolution." Wright v. West, 505

4  U.S. 277, 296-97 (1992), *citing* Jackson, 443 U.S. at 326.  The court does not reweigh the evidence,

5  nor may the court "make its own subjective determination of guilt or innocence." Jackson, 443 U.S.

6  at 320.  Credibility determinations are exclusively the province of the trier of fact.  Id. at 319, 326.

7  The court of appeal emphasized:  "We will not reverse unless it clearly appears that on no hypothesis

8  whatever is there sufficient substantial evidence to support the jury's verdict." (Lodgment No. 3 at 6,

9  citing, *inter alia*, People v. Redmond, 71 Cal.2d 745, 755 (1970); People v. Stewart, 77 Cal.App.4th

10  785, 790 (2000).)

11      State law establishes the required elements of criminal offenses.  Estelle, 502 U.S. at 67-68.

12  As discussed by the court of appeal affirming Ratliff's conviction, the crime of burglary under

13  California law does not require that anything be actually stolen, but only that the defendant have the

14  intent to steal at the time of entry. (Lodgment No. 3, slip op. at 6-7; People v. Allen, 21 Cal.4th 846,

15  863 n. 18 (1999).)  That court observed an "intent to steal may be inferred from an unlawful entry

16  without reasonable explanation of the entry (see *People v. Jordan* (1962) 204 Cal.App.2d 782, 786)

17  or from flight after being discovered (*People v. Frye* (1985) 166 Cal.App.3d 941, 947. . . ." (Id. at 7.)

18  The intent to steal "may be inferred from all the facts and circumstances." Frye, 166 Cal.App.3d at

19  947.  "Such intent may also be inferred where the defendant is a stranger and enters a home at a late

20  hour, without permission, and without announcing his intent." (Lodgment No. 3, slip op at 7, citing

21  People v. Swenson, 28 Cal.App.2d 636, 639-40 (1938).)

22      The court of appeal summarized the evidence, as reproduced above, applied the appropriate

23  legal standards, then determined "the prosecution's evidence of Ratliff's intent is not sheer

24  speculation," and "a reviewing court's opinion that the circumstances might also reasonably be

25  reconciled with a contrary finding does not warrant reversal of the judgement." (Lodgment No. 3, slip

26  op. at 8, 10.)  "The jury in this case disbelieved Ratliff's story, and our role on appeal is simply to

27  determine whether its findings in support of the burglary convictions are supported by sufficient

28  evidence." (Id. at 8.)  "The record here contains substantial circumstantial evidence supporting the

1  jury's findings on the question of Ratliff's felonious intent." (Id. at 8-9, finding Ratliff's cited authority

2  distinguishable.)  The state court record supports Respondent's argument, quoting Juan H., 408 F.3d

3  at 1274-75, that given the "sharply limited nature of constitutional sufficiency review," and applying

4  the "additional layer of deference" required by AEDPA, the state courts reached an objectively

5  reasonable result in rejecting Ratliff's sufficiency of the evidence challenge on the intent element of

6  the burglary offense.  (ECF No. 70-1, 20:1-10, citing Cavazos v. Smith, 565 U.S. __, 132 S.Ct. 2

7  (2011) (state court did not unreasonably apply Jackson v. Virginia in deciding the evidence was

8  sufficient to support the jury's conclusion).

9         In consideration of controlling United States Supreme Court authority, it is recommended the

10  Court find the state courts reached an objectively reasonable result that comports with United States

11  Supreme Court authority in denying Ratliff relief on his Petition Ground Four insufficient evidence

12  claim.  AEDPA accordingly does not permit this Court to disturb that result. 28 U.S.C. § 2254(d). The

13  additional recommendations that the Court deny Ratliff's Grounds One, Two, and Three as

14  procedurally defaulted or, alternatively, as violating no federal constitutional right, for the reasons

15  discussed above, dispose of all his claims.  The Court should **DENY** the Petition in its entirety, as

16  Ratliff is not in custody in violation of federal law.  28 U.S.C. § 2254(d), (a).

17  **III.    CONCLUSION AND RECOMMENDATION**

18         The Court submits this Report and Recommendation to United States District Judge Marilyn

19  L. Huff under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court

20  for the Southern District of California.   For all the foregoing reasons, **IT IS HEREBY**

21  **RECOMMENDED** this habeas Petition be **DENIED** in its entirety on grounds the Petitioner

22  procedurally defaulted his federal claims in the state courts except Ground Four, and even if he had

23  not, his custody violates no federal right under any of his theories.   **IT IS FURTHER**

24  **RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and

25  Recommendation and (2) directing that judgment be entered denying the Petition.

26         **IT IS HEREBY ORDERED** no later than **May 17, 2012**, any party to this action may file

27  written objections with the Court and serve a copy on all parties.  The document should be captioned

28  "Objections to Report and Recommendation."

1    **IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and

2    served on all parties no later than fourteen (14) days from service of Petitioner's filed Objections.  The

3    parties are advised that failure to file objections within the specified time may waive the right to raise

4    those objections on appeal of the Court's Order.  *See* <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir.

5    1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

6    DATED:  April 17, 2012

7

8    DAVID H. BARTICK
     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28